FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**Southern Division**

98 SEP 18 PM 2: 56
U.S. DISTRICT COURT
N.D. OF ALABAMA

BOBBY J. HARRIS,                          )
                                          )
  Plaintiff,                    )
                                          )
                                          )   Civil Action No.
-vs.-                                     )   CV-97-P-0247-S
                                          )
ROBINS CORPORATION; ROBINS               )
& MORTON CORPORATION; and                )        **ENTERED**
ROBINS & MORTON GROUP,                    )
a general partnership,                    )        SEP 2 1 1998
                                          )
  Defendants.                   )

## MEMORANDUM OPINION

The defendants filed a Motion for Summary Judgment on November 14, 1997 that was

considered at the December 17, 1997 motion docket. After hearing oral argument, the court took

the motion for summary judgment under submission. For the reasons expressed below, the

defendants' summary judgment motion is due to be GRANTED as to the breach of contract claims,

GRANTED as to the fraud claims, and DENIED as to the ADEA claim.

## Facts[1]

This case arises as a result of the March 18, 1996 termination of plaintiff Bobby Harris from

his position as Chief Financial Officer of the defendant companies.[2] The plaintiff alleges that the

---

[1] The facts as stated in this memorandum are based upon the materials submitted by the parties viewed in the light most favorable to the plaintiff.

[2] The defendants in this case are three related entities.

defendants made representations and oral assurances to him prior to 1996 that the plaintiff's employment would continue until the year 2005. After his termination, the plaintiff immediately challenged the decision to end his employment and brought this action, asserting that the defendants: (1) breached an implied contract of employment, (2) fraudulently misrepresented or suppressed information relevant to his employment, and (3) discriminated against him because of his age. The defendants deny these allegations and assert that the plaintiff was an at-will employee who was fired for using the defendants' resources and assets to foster a competing enterprise.

In 1967, the plaintiff, Bobby Harris, began working for Robins Engineering Company, Inc., a single construction company from which the three defendant entities eventually emerged. Although the plaintiff began as a materials expediter, he advanced into more responsible operations jobs, eventually serving as the Secretary/Treasurer of Robins Engineering from 1978 to 1987. In 1987, when Robins Engineering and its subsidiaries were reorganized under the name "The Robins Corporation," the plaintiff became an employee of the reorganized corporation, serving as its Secretary/Treasurer.

In 1992, Chief Executive Officer ("CEO") Barry Morton began formulating a Business Continuation and Management Succession ("BCMS") plan.[3] By that time, the plaintiff had been promoted to Chief Financial Officer ("CFO") of The Robins Corporation and owned approximately 10% of the company's stock. Although he was eventually given considerable responsibility as CFO,

---

[3] Under the BCMS plan, the plaintiff retained his stock in the Robins Corporation and also purchased stock in the newly-formed Robins & Morton Corporation. The shareholder agreements, signed by the plaintiff, provide that (1) the companies would repurchase plaintiff's stock upon the voluntary or involuntary termination of his employment and that (2) the agreements did not confer upon the plaintiff a right to employment and did not alter the "at will" employment relationship between the plaintiff and the companies. Plaintiff admits in his deposition that he was "a substantial participant" in the formulation of the plan.

2

there is evidence that over the years the plaintiff had been involved in some negative employment-related incidents.[4]

The plaintiff's son, Mike Harris, also worked for the defendants. Mike Harris began as a part time employee but eventually worked for the defendants full time until 1995, when he decided to go into business for himself. On March 7, 1995, Mike Harris formed M.J. Harris, Inc., a construction company, with $190,000 start-up capital from the plaintiff and $25,000 of his own money.[5] The plaintiff told Barry Morton and Wayne Gordon of his son's venture but informed Mr. Morton that he "would not be involved in the management of the company." The plaintiff asserts that the defendant's did not object to the plaintiff's involvement in the new company. The defendants admit that they were aware that the plaintiff's son was starting his own business and even referred some work to him. However, the defendants assert that they were ignorant of the extent of the plaintiff's financial and managerial involvement in M.J. Harris and would never have given approval of such involvement. There is evidence that the plaintiff spent time and resources working on M.J. Harris, Inc. business while employed by the defendants. The defendants assert that it was the plaintiff's extensive and unauthorized involvement in his son's corporation that caused Barry Morton to terminate the plaintiff.

## I. Breach of Contract

In this case, in order to succeed in a breach of contract claim, the plaintiff must provide

---

[4]Two specific incidents are cited by the defendants in their brief in support of their motion for summary judgment, including reassignment as a result of mismanagement and an allegation of sexual harassment.

[5]The plaintiff received approximately 95% of M.J. Harris, Inc.'s stock in return for his investment.

3

evidence that a valid employment contract existed under Alabama law.  The general rule in Alabama is that an oral employment contract that does not contain specifics regarding term, length, or duration is considered one of employment-at-will.  See Scott v. Lane, 409 So. 2d 791, 793 (Ala. 1982).  At-will employment contracts may be terminated at the will of either the employer or the employee, with or without cause.  See Bates v. Jim Walter Resources, Inc., 418 So. 2d 903 (Ala. 1982).  Proof that an employment relationship is one other than "at will" requires evidence  "(1) that there was a clear and unequivocal offer of lifetime employment or employment for a definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered." Lee v. City of Gadsden, 592 So. 2d 1036, 1038 (Ala. 1992) (quoting Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 728 (Ala. 1987)) (internal citations omitted).

The plaintiff in this case relies on various documents to support his theory that an employment contract of definite term, length and duration exists.[6]  While the evidence does exhibit an acknowledgment that the plaintiff was a key employee, especially in light of his position as CFO, it does not rise to the level of establishing that an employment contract for a specific term existed.  The plaintiff also relies on oral discussions with "Barry Morton and senior managers of the Robins Defendants who acknowledged and confirmed his employment agreement with the Robins Defendants until the year 2005 including, but not limited to, discussions during employment reviews with Barry Morton" on several occasions. (Complaint, paragraph 14).  However, without more than these purported representations, the plaintiff's claim must fail under Alabama law.  An oral employment

---

[6]The plaintiff points to an October 1992 memorandum, a list of personal goals relating to the BCMS plan, and various other documents.

4

contract that exceeds one year in duration is void under the State of Frauds absent a written agreement signed by the party to be charged that sets forth the terms of the contract. See Selby v. Quartol Corp., 514 So. 2d 1294, 1296 (Ala. 1987). Viewing the facts in the light most favorable to the plaintiff, the courts finds that any employment relationship that existed between the plaintiff and the defendants was one of employment-at-will. Therefore, without sufficient evidence that an employment contract for a definite term existed, summary judgment on the plaintiff's claims for breach of contract is due to be GRANTED in favor of the defendant.

## II. Fraud

The plaintiff's fraud claims are two-fold. First, the plaintiff's fraud and suppression claims are based on allegations that, at the time alleged representations were made about the plaintiff's continued employment until the year 2005, the defendants did not intend to allow the plaintiff to continue working until that time. (Complaint, Count III).    According to the plaintiff, between October of 1992 and 1996, the defendants created and thereafter concealed a plan to terminate him. Second, the plaintiff asserts a claim for negligent, reckless, wanton, or intentional fraudulent misrepresentation. The plaintiff alleges that the defendants made representations to him that they had no objection to the plaintiff's involvement with his son's construction company. The plaintiff further claims that the defendants wrongfully concealed their disapproval of his involvement in M.J. Harris, Inc. in order to rely on this involvement as a legitimate, non-discriminatory reason for firing the plaintiff.

In this case, the plaintiff's fraud and misrepresentation claims involve future acts. Under Alabama law, where a fraud claim involves the performance of future acts, the plaintiff must not only "present evidence of the basic elements of fraudulent misrepresentation, but he also must present

5

substantial evidence that [the defendants] intended, at the time of the representation, not to perform, and that [the defendants] made the representation[s] with the present intention to deceive." Campisi v. Scoles Cadillac, Inc., 611 So. 2d 296, 300 (Ala. 1992) (citing Walters v. Lawrence County, 551 So. 2d 1011 (Ala. 1989)) (internal citations omitted). Based on a review of the briefs and evidentiary submissions, there is nothing to indicate that the defendants had any intention of deceiving the plaintiff at the time of the alleged misrepresentations. Furthermore, because the plaintiff has not presented sufficient evidence to establish that a definite employment contract existed, the plaintiff's fraud claims relating to the alleged employment contract must also fail. Even if an employment contract for a specific term did exist, the plaintiff has presented no evidence that the defendants intended to terminate the plaintiff at the time the alleged contract was made. As stated in Condelles v. Alabama Telecasters, Inc., "[t]he failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. If it were, the mere breach of a contract would be tantamount to fraud." 530 So. 2d 201, 204 (Ala. 1988) (citing Russellville Production Credit Assoc. v. Frost, 484 So. 2d 1084, 1086 (Ala. 1986)). Because there is no genuine issue of material fact, the defendants' motion for summary judgment is due to be GRANTED as to the plaintiff's fraud claims.

### III. ADEA

The Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., forbids discrimination by employers against persons who are over forty years of age. In the Eleventh Circuit, a plaintiff claiming age discrimination must initially establish a prima face case of discrimination by either (1) producing direct evidence of discriminatory intent, (2) showing circumstantial evidence of discrimination under the McDonnell Douglas framework, or (3) presenting statistical proof. See Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989); McDonnell Douglas Corp. v. Green, 411

U.S. 293 (1973). Because the plaintiff did not present statistical evidence in this case, only the first and second methods are at issue.

Based on the briefs and evidence presented by the parties, the court finds that genuine issues of material fact exist that would preclude summary judgment from being entered on the ADEA claim. Therefore, the court is due to DENY summary judgment on the ADEA claim at this time.

### IV. Conclusion

Summary judgment is due to be granted on the breach of contract and fraud claims because there exist no genuine issues of material fact and the defendant is entitled to summary judgment as a matter of law. The ADEA claim, however, presents a factual dispute that cannot be resolved at the summary judgment stage. As such, the summary judgment motion relating to the plaintiff's ADEA is due to be denied and this case should proceed on the age discrimination claim alone.

Dated: _Sept. 18_, 1998.

Chief Judge Sam C. Pointer, Jr.

Service List:
James P. Alexander
Jeffrey P. Lisenby
Jonathan H., Waller
Martha R. Cook

7